**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ZACKARY SANDERS,<br><br>Plaintiff,<br><br>v.<br><br>RACHEL THOMPSON,<br>*Warden*<br><br>Defendant. | Civil Action No. 25-18221 (GC)<br><br>**MEMORANDUM & ORDER** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court on *pro se* Plaintiff Zackary Sanders's Motion for Reconsideration. (ECF No. 5.) Plaintiff is a convicted and sentenced federal prisoner.

On or about December 1, 2025, the Clerk of the Court received a *pro se* filing entitled "Emergency Motion for Status Update and Order to Show Cause" ("OTSC"). (ECF No. 1 ("Emergency Motion").)

According to the Emergency Motion, which is dated November 23, 2025, "Plaintiff . . . respectfully files this emergency motion for status update and [OTSC] necessitated by defendants blocking Plaintiff's access to the courts as well as the tampering with, theft, and destruction of Plaintiff's legal mail/court filings at FCI Fort Dix-West." (*Id.* at 1.) Plaintiff specifically asks the Court to order Defendants to show cause as to (1) where Plaintiff's two "missing motions are and promptly locate them and mail them, and explain how and why they were mishandled" and why Defendants failed to mail Plaintiff's legal mail to the Court. (*Id.* at 4.) Plaintiff also requests that the Court provide a status update "on how to proceed to ensure this [First Amendment retaliation

matter] can be litigated to end the illegal retaliation, have him returned to his regular unit/room at FCI Fort Dix-West, . . . be able to again see his family and purchase legal supplies and necessities" and to appoint *pro bono* counsel because of Defendants' obstruction of Plaintiff's "legal access."[1] (*Id.*)

On January 7, 2025, the full $405 filing fee was received, and the Emergency Motion was filed on the docket as a "Complaint."

In a January 20, 2026 Memorandum and Order, this Court ordered that "Plaintiff's requests for an OTSC, a 'status update,' and appointment of counsel (ECF No. 1) are **DENIED without prejudice**." (ECF No. 4 at 4.) Specifically, the Court denied the OTSC request because the Emergency Motion (which the Court characterized as a "Complaint"), "is not verified, and he has not filed any affidavit or other document complying with [28 U.S.C.] § 1746" and Local Civil Rule 65.1(a). (ECF No. 4 at 2.) Furthermore, the Court noted that "there is *no* case law requiring courts to provide general legal advice to pro se parties," and the Supreme Court has repeatedly concluded that courts have no such obligation." (*Id.* at 2-3 (emphasis in original) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 243 (3d Cir. 2013)). Finally, Plaintiff's request for appointment of counsel was denied because Plaintiff (who paid the filing fee and did not apply to proceed *in forma pauperis* ("IFP")) made no showing that he is unable to afford an attorney. (*Id.* (citing 28 U.S.C. § 1915(e)(1)).)

The Court further explained that, under 28 U.S.C § 1915(A)(a), "[t]he court shall review before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee

[1] As of November 23, 2025, Plaintiff was incarcerated at USP Lewisburg, Lewisburg, Pennsylvania. (ECF No. 1 at 4.) Plaintiff was subsequently transferred to, and remains confined at, FCI Danbury, Danbury, Connecticut. (ECF No. 3.)

of a governmental entity," and that "the court shall dismiss the complaint, or any portion of the complaint, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." (ECF No. 4 at 3-4.) According to the Court, "[t]he [']Complaint['] will be screened under this statutory provision in due course." (*Id.* at 4.)

On or about February 2, 2026, Plaintiff filed his verified Motion for Reconsideration, asking the Court to vacate and amend its January 20, 2026 Memorandum and Order to correct manifest errors of law and fact. (ECF No. 5 at 1.) Plaintiff asserts that "[t]he 'Complaint' (Doc. 1) referenced in this Court's January 20, 2026 Memorandum and Order (Doc. 4) is not the complaint." (*Id.*) According to Plaintiff, as he purportedly noted in the Emergency Motion, Plaintiff wrote a civil complaint and a motion for a temporary restraining order ("TRO") and preliminary injunctive relief during the week of November 3, 2025 (which, for purposes of this Memorandum and Order, the Court refers to as the "November 2025 Complaint and Motion for TRO and Preliminary Injunctive Relief"), but Defendants as well as other staff initially refused to accept that document for mailing. (*Id.*) On Thursday, November 6, or 7, 2026, a staff member accepted the November 2025 Complaint and Motion for TRO and Preliminary Injunctive Relief, and Plaintiff signed the legal mail logbook. (*Id.* (citing ECF No. 5 at 7).) However, the Court never received the document. (*Id.*) Plaintiff contends that Malloy's direct supervisor was Defendant Unit Manager Dykes, who was one of the individuals who previously refused to accept the document for mailing, and, when Defendants Captain Shannon and Warden Thompson became aware of the contents of "the motion," Shannon and Thompson requested his retaliatory transfer from Fort Dix to be expedited in an attempt to remove him before a TRO could be issued. (*Id.*) Plaintiff accordingly drafted "another motion to this court in regards to the missing original

compliant and TRO Motion," which, after staff repeatedly refused to accept as legal mail, was finally accepted as regular mail by Lt. Cavalier (who left the motion accessible to other staff who previously tampered with the mail). (*Id.* at 1-2.) The second motion "likewise did not ever arrive at this court," and Plaintiff was transferred from Fort Dix on November 18, 2025, and, upon his arrival at Lewisburg, he wrote the Emergency Motion. (*Id.* at 2.)

According to Plaintiff, under the prison mailbox rule, his November 2025 Complaint and Motion for TRO and Preliminary Injunctive Relief must be deemed filed, even though it was never received by the Court. (*Id.* at 2-3 (further arguing that Plaintiff exhibited reasonable diligence by filing the Emergency Motion).) Denying that he ever requested general legal advice, Plaintiff argues that he had "instead requested that this Court enter an Order how the case is to proceed seeing as this Court does not seem to have in its possession the Complaint and Emergency Motion for [TRO] and Preliminary Injunctive Relief, yet legally it was indeed filed at the latest on November 7th, 2025." (*Id.* at 3 (claiming that it is the Court's duty to manage its docket and decide whether to order Defendants to explain what happened with "Plaintiff's Motion" and, if possible locate it and provide it to this Court, or, "whether Plaintiff is to be directed to rewrite it and submit it to this Court as an amended complaint in this action," or "some other solution").)

Concerning the appointment of counsel issue, Plaintiff asserts that his family was forced to pay the filing fee "after contacting this Court's chambers to inquire as to why an emergency motion hadn't been responded to, and being informed the Court was waiting for payment before a response would issue, even though the November 23rd Motion had stated Plaintiff was only provided with two sheets of paper (Doc. 1 at 3) so he could not write or file anything else." (ECF No. 5 at 3-4.) Plaintiff further claims that the Court's failure to take action on the Emergency Motion resulted in his subsequent hospitalization and permanent damage caused by further

retaliatory actions by Lewisburg staff (*i.e.*, taking an otherwise legally blind Plaintiff's glasses and destroying the lenses so that Plaintiff could not read staff nametags) and Danbury staff (*i.e.,* Danbury staff are refusing to replace the lenses, and the warden has threatened to transfer him to a higher security level institution and denied necessary medication). (*Id.* at 4.) According to Plaintiff, he is unable to afford an attorney and intends to file an IFP application once he obtains the certified prison account statement.[2] (*Id.*)

Plaintiff argues that it would be a grave miscarriage of justice to countenance Defendants' disrespect of the rule of law by denying Plaintiff relief based upon grounds caused by Defendants, he is suffering irreparable injury every additional day that passes, and a TRO and preliminary injunction should issue to return Plaintiff to the general population at FCI Fort Dix-West, restore access to his specialist neurologist, medications, and corrective lenses, and restrain Defendants from taking further retaliatory action. (*Id.*) "Plaintiff respectfully requests that this Court vacate and amend its January 20th, 2026 Memorandum and Order to address how this Court will proceed with the legally filed Complaint it is not in possession of, order necessary briefing, and grant provisional IFP status and appoint counsel." (*Id.* at 4-5.)

Although the Federal Rules of Civil Procedure do not expressly authorize motions for reconsideration, the Local Civil Rules permit such motions if the movant (1) files the motion "within 14 days after the entry" of the challenged order and (2) sets "forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." L. Civ. R. 7.1(i). Motions for reconsideration are "extremely limited procedural vehicle(s)" that are to be granted "very sparingly." *Clark v. Prudential Ins. Co. of Am.*, 940 F. Supp. 2d 186, 189 (D.N.J. 2013) (alteration in original) (citations and quotation marks omitted). Such motions may be granted only

---

[2] Plaintiff subsequently submitted an IFP application, dated February 26, 2026. (ECF No. 6.)

if the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citations and emphasis omitted). "Only where matters were overlooked and which, if considered by the Court, might reasonably have resulted in a different conclusion, will the Court entertain such a motion." *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001).

Motions for reconsideration are "not a vehicle for a litigant to raise new arguments or present evidence that could have been raised prior to the initial judgment." *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 168 (D.N.J. 2013). Nor are they opportunities to seek a "second bite at the apple." *Sussman v. Capital One, N.A.*, Civ. No. 13-6483, 2015 WL 164095, at *4 (D.N.J. Jan. 13, 2015) (citation omitted). It is improper to "'ask the court to rethink what it ha[s] already thought through—rightly or wrongly.'" *Lynch v. Tropicana Prods., Inc.*, Civ. No. 11-07382, 2013 WL 4804528, at *1 (D.N.J. Sep. 9, 2013) (quoting *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co. of Md.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990)).

"Because the requirements are so stringent, motions for reconsideration typically are not granted." *CPS MedManagement*, 940 F. Supp. 2d at 168. Therefore, "[u]nless a court has truly failed to consider pertinent authorities or evidence that could not with reasonable diligence have been presented earlier, a motion to reconsider a decision (even one that may contain an error) is generally futile." *Id.*

Initially, Plaintiff does not dispute (or even mention) the Court's rationale for denying his request for an OTSC, *i.e.*, the fact that Plaintiff's "Emergency Motion" (ECF No. 1) "is not

verified, and he has not filed any affidavit or other document complying with § 1746." (ECF No. 4 at 2.)

Instead, Plaintiff challenges the characterization of the initial filing received by the Clerk in this matter as a "Complaint" and asks the Court to treat the November 2025 Complaint and Motion for TRO and Preliminary Injunctive Relief he delivered to prison authorities for mailing as his legally filed complaint, even though he concedes that this prior document was not received by the Court. The Clerk of the Court reasonably docketed the Emergency Motion as the operative "Complaint" in this matter because it is well established that "[a] civil action is commenced by filing a complaint with the court," Fed. R. Civ. P. 3, § 1915A(a) requires the Court to screen "the complaint," and courts have an obligation to construe *pro se* filings liberally, *see Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). The Emergency Motion also does not state that the Plaintiff delivered a "Complaint" for mailing to the Court; instead, it refers to "a motion for a [TRO] and preliminary injunctive relief" that he drafted the week of November 3, 2025, was eventually handed over for mailing to the Court (with Plaintiff signing the legal mail logbook on November 6, 2025), and was never docketed by the Court. (ECF No. 1 at 2.)

Furthermore, the prisoner mailbox rule cases cited by Plaintiff involve timeliness-related issues. *See Houston v. Lack*, 487 U.S. 266, 268 (1988) ("The question we decide today in this case is whether under Federal Rule of Appellate Procedure 4(a)(1) [providing that, in civil cases, the notice of appeal shall be filed within 30 days after the date of entry of the judgment or order] such notices are to be considered filed at the moment of delivery to prison authorities for forwarding or at some later point in time"); *Webb v. Dep't of Just.*, 117 F.4th 560, 563 (3d Cir. 2024) (concluding that notice of appeal is deemed filed on the day the inmate placed it in the prison mailbox for electronic filing, "so his appeal is timely"); *Huizar v. Carey*, 273 F.3d 1220, 1222-24 (9th Cir.

2001) (considering whether state habeas petition that was allegedly delivered to prison officials for mailing but not received by the state court tolled the AEPDA one-year statute of limitations from the date he gave the state petition to officials); *Allen v. Culliver*, 471 F.3d 1196, 1197 (11th Cir. 2006) (per curiam) ("Robert Allen appeals the district court's denial of his motion to accept as timely a Notice of Appeal ('NOA') from the denial of his petition for habeas corpus." (footnote omitted)); *Ray v. Clements*, 700 F.3d 993, 995 (7th Cir. 2012) ("We disagree and adopt the rule set forth by the majority of our sister circuits that the prisoner mailbox rule governs whether a state post-conviction document is 'properly filed' under the AEDPA limitations period unless the state has clearly rejected it."); *United States v. McNeil*, 523 F. App'x 979, 979-80 (4th Cir. 2013) (considering timeliness of notice of appeal under the prisoner mailbox rule). In contrast, the Court obviously cannot screen and dismiss a complaint (or any portion of the complaint) that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief if the complaint has never been received.

Furthermore, with respect to his request to appoint counsel and request for the Court to order Defendants to explain what happened with the November 2025 Complaint and Motion for TRO and Preliminary Injunctive Relief, Plaintiff has applied for IFP. (ECF No. 6.) However, the Court has yet to receive an operative complaint for screening under § 1915A(a). On September 11, 2026, the Honorable Toni J. Bongiovanni, U.S.M.J., denied Plaintiff's "Motion for a Status Conference," in which he requests a status conference "to determine how this case can proceed in a timely manner" and "states, in passing, that the appointment of counsel would likely aid in the resolution of this matter." (ECF No. 8 (quoting ECF No. 7 at 3-4).) Magistrate Judge Bongiovanni denied Plaintiff's requests as premature on the grounds that "Plaintiff's Complaint" has not yet

been screened. (*Id.*) In fact, given Plaintiff's clarification in his Motion for Reconsideration, no "Complaint" has been received and docketed in this matter.

Accordingly, the Court denies the Motion for Reconsideration. Within forty-five (45) days of the date of entry of this Memorandum and Order, Plaintiff may file an operative complaint in this matter, which will then be screened under § 1915A(a) in due course.

**IT IS**, therefore, on this 28th day of September 2026, **ORDERED** as follows:

1. Plaintiff's Motion for Reconsideration (ECF No, 5) is **DENIED**
2. The Clerk of the Court shall **TERMINATE** the Motion pending at ECF No. 5.
3. The Clerk of the Court shall **ADMINISTRATIVELY TERMINATE** this matter; Plaintiff is advised that administrative termination is not a "dismissal" for purposes of the statute of limitations, and that if the case is reopened, it is not subject to the statute of limitations time bar if it was originally filed timely, *see Papotto v. Hartford Life & Acc. Ins. Co.*, 731 F.3d 265, 275 (3d Cir. 2013) (distinguishing administrative terminations from dismissals); *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 84 n.2 (3d Cir. 2013) (describing prisoner mailbox rule generally); *Dasilva v. Sheriff's Dep't.*, 413 F. App'x 498, 502 (3rd Cir. 2011) (per curiam) ("[The] statute of limitations is met when a [motion] is submitted to the clerk before the statute runs . . . .").
4. If Plaintiff wishes to reopen this case, he shall so notify the Court, in a writing addressed to the Clerk of the Court, Clarkson S. Fisher Building & U.S. Courthouse, 402 East State Street, Trenton, NJ 08608, within forty-five (45) days of the date of entry of this Memorandum and Order; Plaintiff's writing shall include his completed and signed operative complaint.

5. Upon receipt of a writing from Plaintiff stating that he wishes to reopen this case, and the completed, signed operative complaint, the Clerk of the Court will be directed to reopen this case, and the Court will screen the complaint under 28 U.S.C. § 1915A(a) in due course.

6. The Clerk of the Court shall send a copy of this Memorandum and Order and a blank form DNJ-ProSe-006-ProSePrisCvRghtsCmpFrm-STANDARD-(Rev.05-2013, 12/2023) to Plaintiff by regular U.S. mail.

Georgette Castner

**GEORGETTE CASTNER**
**United States District Judge**